UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENNETH HAWKINS | : | CRIMINAL NO. 3:00CR75(AWT) |
| Petitioner | : | CIVIL NO.   3:05CV1186(AWT) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | February 24, 2006 |
| Respondent | | |

## **GOVERNMENT'S OPPOSITION TO DEFENDANT'S 28 U.S.C. §2255 PETITION**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby respectfully responds to the defendant's habeas corpus petition brought pursuant to Title 28 U.S.C. § 2255 in which he claims that: (1) the district court sentenced him in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (2) his appellate counsel provided ineffective assistance; (3) the district court lacked jurisdiction over the case; and (4) his guilty plea was unknowingly made because he was not properly advised of an essential element of the crime to which he pleaded guilty.

For the following reasons, the defendant's petition is wholly without merit, and should be denied without a hearing.

### **PROCEDURAL HISTORY**

On March 16, 2000, law enforcement officials arrested the petitioner Kenneth Hawkins on the basis of a federal criminal complaint charging him with threatening witnesses, in violation of 18 U.S.C. § 1513(b)(2).

On April 11, 2000, a grand jury in Connecticut returned an

indictment against Hawkins, charging him with conspiring to distribute marijuana, in violation of 21 U.S.C. § 846, and for threatening witnesses, in violation of 18 U.S.C. § 1513(b)(2). Hawkins was ordered detained prior to trial.

On December 27, 2000, in light of the *Apprendi* decision, the Government secured a second superseding indictment against Hawkins and the other remaining defendant in the case, Jose Aguirre.  Count One of this indictment charged Hawkins with participating in a conspiracy from September 1998 to November 1999 to possess with intent to distribute and to distribute *100 kilograms or more of marijuana*, in violation of 21 U.S.C. § 846. (Emphasis supplied).  This conspiracy involved Hawkins' distribution activities of marijuana from Arizona.

Count Two of the indictment charged both Hawkins and Aguirre with participating in another conspiracy – from August 1999 to February 2000 – to possess with intent to distribute and to distribute *100 kilograms or more of marijuana*, in violation of 21 U.S.C. § 846. (Emphasis supplied).  This conspiracy involved Hawkins' distribution of marijuana that he purchased from Aguirre in Texas.

Count Three of the indictment charged Hawkins with threatening witnesses on March 16, 2000, in violation of 18 U.S.C. § 1513(b)(2).

On February 9, 2001, the district court selected a jury.  On

the same day, at the conclusion of jury selection, Hawkins entered a plea of guilty to the conspiracy charged in Count One (the Arizona conspiracy).

On March 2, 2001, Hawkins moved to withdraw his guilty plea. But on March 13, 2001, Hawkins withdrew his motion to withdraw the guilty plea.  On July 18, 2001, Hawkins moved again to withdraw his guilty plea.  On July 23, 2001, the district court conducted a hearing and denied the motion.  Two days later, on July 25, 2001, the district court sentenced Hawkins principally to a term of 170 months of imprisonment, to be followed by a term of ten years of supervised release.  On the same day, Hawkins filed a timely notice of appeal.

In his appeal, Hawkins argued that: (1) the district court should have conducted a hearing, *sua sponte*, to determine Hawkins' competency to represent himself and plead guilty; (2) he did not voluntarily, knowingly, and intelligently waive his right to counsel at his plea hearing; (3) there was insufficient evidence to support the finding that Hawkins was an organizer in the drug conspiracy; (4) he did not obstruct justice and (5) he was entitled to credit for acceptance of responsibility.

The Second Circuit issued an unpublished opinion on February 3, 2004, denying the petitioner's appeal on February 3, 2004. *See United States v. Jose Aguirre*, 87 Fed. Appx. 200 (2004).

On February 2, 2005, the petitioner filed the instant motion

−3−

to vacate, set aside or otherwise correct his sentence pursuant
to 18 U.S.C. § 2255 [Doc. #'s 268 and 269].  Hawkins supplemented
the motion with a filing on July 25, 2005 [Doc. # 271].

## SUMMARY OF ARGUMENT

FIRST: The second superseding indictment in this matter gave
Hawkins specific notice of the quantity and nature of the drug at
issue, and thus of his sentencing parameters.  The defendant's
sentence of 170 months is less than the statutory maximum of 40
years.  Accordingly, it was not imposed in violation of *Apprendi*.
Moreover, the Second Circuit has determined that *Blakely v.
Washington*, 124 S.Ct. 2531 (2004), and *United States v. Booker*,
125 S.Ct. 738 (2005) – Supreme Court cases decided since the
petitioner lost his appeal, but which redefined the contours of
federal sentencing – announced a new constitutional rule of
criminal procedure that is not retroactively applicable on
collateral review.  *See United States v. Guzman*, 404 F.3d 139 (2d
Cir. 2005).

SECOND: Appellate counsel was not unconstitutionally
ineffective in failing to raise an argument pursuant to *Apprendi*
to challenge the defendant's sentence in this case.  The
superseding indictment specifically charged that Hawkins
conspired to possess with intent to distribute and to distribute
100 kilograms or more of marijuana.  During the change of plea,
the defendant was advised of the effect of *Apprendi* on his case.

-4-

As such, counsel's performance did not fall "below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

THIRD: The district court did not lack jurisdiction over this case, a marijuana conspiracy in violation of 21 U.S.C. § 846. *See* 18 U.S.C. § 3231.

FOURTH: The defendant was properly advised of the elements of the offense at the time he pleaded guilty, and jurisdiction is not an element of a narcotics offense committed in the United States.

## DISCUSSION

An analysis of the petitioner's motion must necessarily begin by reference to § 2255 and the legal principles that govern its application. Section 2255 does not provide a remedy of "all claimed error in conviction and sentencing," *United States v. Addonizio*, 442 U.S. 178, 184 (1979), but is intended to redress only "fundamental defects" that result in a miscarriage of justice and "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 426 (1962).

Section 2255 provides that the district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." The Supreme Court has held that this language "does not

strip the district courts of all discretion to exercise their common sense." *Machibroda v. United States*, 368 U.S. 487, 495 (1962).  Indeed, to be entitled to a hearing, a petitioner must allege specific facts to support his or her claim.  "Mere generalities or hearsay statements will not normally entitle the applicant to a hearing . . . . The petitioner must set forth specific facts which he is in a position to establish by competent evidence." *Dalli v. United States*, 491 F.2d 758, 760-61 (2d Cir. 1974).  *See also Hayden v. United States*, 814 F.2d 888, 892 (2d Cir. 1987).

A section 2255 motion may be dismissed without a hearing if, after a review of the record, the Court determines that the motion is without merit because the allegations are insufficient as a matter of law.  *Johnson v. Fogg*, 653 F.2d 750, 753 (2d Cir. 1981); *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970); 28 U.S.C. Section 2255.

The petitioner's claims are addressed in turn below.  Each can be denied without a hearing.

### A.    The Court did not violate *Apprendi* in sentencing the defendant.

In his memorandum, the petitioner argues that in light of *Apprendi*, the district court improperly increased his Guidelines offense level when it assessed a four point adjustment for his leadership role and a two level increase for obstruction of

-6-

justice.

In *Apprendi,* the Supreme Court held that "any fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id*. at 476 (citation omitted). The petitioner claims that this court violated the due process right articulated in *Apprendi* when it applied sentence enhancements for role and obstruction at the sentencing hearing. This claim has no merit, however, because under prevailing Second Circuit law, *Apprendi* was not construed to apply in cases where the defendant has been sentenced to the statutory maximum or less. *United States v. White*, 240 F.3d 127, 134-35 (2d Cir. 2001). In other words, if the trial court sentences a defendant at or below the statutory maximum on each count for which he or she was convicted, the *Apprendi* rule is not triggered, even where each count is to run consecutively rather than concurrently. *Id*.; *see also Apprendi*, 530 U.S. at 481 ("nothing ... suggests that it is impermissible for judges to exercise discretion ... in imposing a judgment *within the range* prescribed by statute.") (emphasis in original). Nor does the fact that a sentence was enhanced pursuant to federal Sentencing Guidelines trigger *Apprendi* as long as the ultimate sentence for each count is not above the statutory maximum. *United States v. McLeod*, 251 F.3d 78, 82 (2d Cir. 2001) ("*Apprendi* is inapplicable to Guidelines

-7-

calculations that do not result in a sentence on a single count above the statutory maximum for that count."). Here, of course, the petitioner's sentence of 170 months of imprisonment does not exceed the 40 year statutory maximum. Accordingly, he has misread *Apprendi* and his claim should be rejected.[1]

**B.    *Blakely* and *Booker* cannot be applied retroactively.**

Second, the petitioner appears[2] to argue that *Blakely* and *Booker* invalidate the Guidelines and, by extension, the 170 month sentence imposed by the district court.

In *United States v. Booker*, 125 S. Ct. 738 (2005), the final

---

[1] In addition, the second superseding indictment [Doc. # 99] specifically alleged that the drug quantity exceeded 100 kilograms of marijuana, thus avoiding any other *Apprendi* issues. For example, in *United States v. Gonzalez*, 420 F.3d 111, 133-34 (2d Cir.2005), the Court ruled that "[t]he drug quantities specified in 21 U.S.C. § 841 are elements that must be pleaded and proved to a jury or admitted by a defendant to support any conviction on an aggravated drug offense, not simply those resulting in sentences that exceed the maximum otherwise applicable." *See also*, *United States v. Thomas*, 274 F.3d 655 (2001), which in the wake of *Apprendi* held that because the quantity of drugs in a crime may raise a defendant's sentence above the statutory maximum for an indeterminate amount of drugs under 21 U.S.C. § 841(b)(1)(C), quantity must be charged in the indictment and proved to a jury beyond a reasonable doubt. *Id.* at 663. However, in such a case the court may consider drug quantity in determining relevant conduct pursuant to U.S.S.G. § 1B1.3(a) so long as the sentence imposed does not exceed the maximum established in § 841(b)(1)(C), which maximum is twenty years. *Id.* at 663-664.

[2] The petitioner's brief, at pages 3-10, mentions the *Booker* and *Blakely* decisions in passing, but focuses primarily on the Court's *Apprendi* decision. In an abundance of caution, the government will address the impact – or lack thereof – of *Booker* and *Blakely* on the instant motion.

piece of the *Apprendi-Blakely-Booker* trilogy relied upon by the petitioner, Supreme Court held that the Sentencing Guidelines violated the Sixth Amendment to the Constitution because such guidelines allowed a maximum sentence authorized by a guilty plea or verdict to increase based on factual findings (other than the proof of a prior conviction) made by a court under the preponderance of the evidence standard. *See id*. at 755-56. To remedy this constitutional violation, the Court held that the Sentencing Guidelines would no longer be mandatory, binding rules for the trial court, but would be advisory, to be considered as part of a whole host of sentencing factors. *See id*. at 756-57. The Court expressly held that its decision applied to all cases pending on direct review. *See id*. The Court, however, did not address whether its holding applied retroactively to cases on collateral review. *See id*. The Second Circuit recently joined several other courts in holding that *Booker* does not apply to cases on collateral review. *See Guzman v. United States*, 404 F.3d 139, 141 (2d Cir. 2005); *see also Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005); *United States v. Price*, 400 F.3d 844, 845 (10th Cir. 2005); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005).

In *Guzman*, the Second Circuit reasoned that, under the analysis set forth in *Teague v. Lane*, 489 U.S. 288 (1989)

(plurality opinion), the decision in *Booker* did not establish a substantive rule or a watershed rule of procedure. *See Guzman*, 404 F.3d at 143 (holding that *Booker* did not establish a watershed rule because "the only change is the degree of flexibility judges enjoy in applying the guideline system.") (internal ellipses and brackets omitted). Relying on the Supreme Court's statement in *Schriro v. Summerlin*, 124 S.Ct. 2519, 2525 (2004) (holding that *Ring* did not apply to cases on collateral review) that "we cannot confidently say that judicial factfinding seriously diminishes accuracy," the Second Circuit explained:

> The procedural defect identified in *Booker* is that sentence-enhancing factors were found by judges rather than by juries, and by a preponderance rather than beyond a reasonable doubt; but the remedy – to render the Guidelines advisory – vested greater discretion in judges, not less. . . . [T]he chief goal of the mandatory Guidelines project was to reduce the 'disparity and inherent unfairness' caused by discretionary sentencing. . . . We cannot say that the Guidelines actually advanced that goal, and mitigated unwarranted disparity and unfairness. By the same token, we cannot assume that the mandatory Guidelines system under which *Guzman* was sentenced seriously diminished the accuracy or fundamental fairness of the sentencing process. In sum, the rule established by *Booker* 'has none of the primacy and centrality of the rule adopted in *Gideon* or other rules which may be thought to be within the exception.'

*Guzman*, 404 F.3d at 143-44. Thus, the Second Circuit's holding in *Guzman* clearly establishes that the principles set forth in *Booker* and its progeny do not apply retroactively to cases on collateral review.

**C.  Appellate Counsel was not unconstitutionally ineffective in failing to advance an argument based on *Apprendi*.**

In a separate but related argument (petitioner's "Issue Two"), the petitioner claims that his appellate counsel ineffectively failed to argue that *Apprendi* required the issues of role and obstruction of justice necessarily had to be submitted to a jury.  To the extent that the petitioner is not asserting a claim directly under *Apprendi, Blakely* and *Booker*, but instead is arguing that his appellate counsel was ineffective for failing to raise the constitutional argument he now raises on collateral review, his claim likewise fails.

First, at the time of the petitioner's sentencing (July 25, 2001) the constitutionality of the Sentencing Guidelines had not been challenged under the Sixth Amendment grounds set forth in *Blakely*.  Indeed, despite the Supreme Court's prior holding in *Apprendi*, the Sentencing Guidelines had not been scrutinized under the Sixth Amendment framework later adopted in *Booker*.  The Second Circuit has specifically noted this fact in *Guzman*:  "It cannot be said that the result in *Booker* was apparent to 'all reasonable jurists'; in *Booker* itself, dissenters undertook to explain why the holding in *Booker* was not compelled by *Apprendi* or *Blakely*."  *Guzman*, 404 F.3d at 142; *see also United States v. Burgess*, 142 Fed. Appx. 232, 240 (6th Cir. June 22, 2005) (unpublished decision) (holding that "trial counsel cannot be

-11-

deemed ineffective for failing to anticipate" decisions in
*Blakely* and *Booker*).  "Counsel is not required to forecast
changes in the governing law."  *United States v. Mayo*, 13 F.3d
528, 533 (2d Cir. 1994).

Second, even had appellate counsel raised the issue
suggested by the petitioner, it would have been rejected because
*Blakely* and *Booker* had not yet been decided, and the Supreme
Court had upheld the constitutionality of the Sentencing
Guidelines.

A person challenging his conviction and sentence on the
basis of ineffective assistance of counsel bears a heavy burden.
*United States v. Atherton*, 846 F. Supp. 170, 173 (D. Conn. 1994).
First, he must show that counsel's performance "fell below an
objective standard of reasonableness."  *Strickland v. Washington*,
466 U.S. 668, 688 (1984).  In making this evaluation, great
deference is to be given to counsel's judgment:

> Because of the difficulties inherent in making an
> evaluation [of effectiveness], a court must
> indulge a strong presumption that counsel's
> conduct fall within the wide range of reasonable
> professional assistance; that is, the defendant
> must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

*Id*. 466 at 689.

Second, a petitioner must show that the errors, if any,
prejudiced his defense.  "[T]he defendant must show that there is
a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. 466 at 694; *See Virella v. United States*, 750 F. Supp. 111, 117 (S.D.N.Y. 1990); *United States v. Schifano*, 748 F. Supp. 172, 176 (S.D.N.Y. 1990). Stated differently, "[t]he benchmark of judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. at 686.

Here, the petitioner's arguments fail to satisfy either prong of the *Strickland* test. First, appellate counsel had no legal basis to advance the misinformed reading of *Apprendi* articulated by the petitioner. Alternatively, the petitioner has not demonstrated how he has been prejudiced by the failure of his attorney to argue in a manner inconsistent with existing law.

**D.    The District Court had jurisdiction over this matter.**

The petitioner has once again dusted off an incoherent jurisdictional challenge to the federal government's prosecution of him for violating federal drug laws. *See* Brief at 15-48 [Doc. # 269]. Simply put, this federal court had jurisdiction to entertain a drug prosecution. The Constitution provides: "The judicial Power of the United States, shall be vested in one Supreme Court, and in such other inferior Courts as the Congress

-13-

may from time to time ordain and establish." U.S. Const. art.
III, Section 1. And Article III, Section 2 of the United States
Constitution provides that: "The judicial Power shall extend to
all Cases, in Law and Equity, arising under this Constitution,
the Laws of the United States, and Treaties made, or which shall
be made, under their Authority[.]" Under 18 U.S.C. § 3231,
district courts have original jurisdiction over all criminal
matters arising under the law of the United States. *See* 18 U.S.C.
§ 3231 (stating that district courts "have original jurisdiction,
exclusive of the courts of the states, of all offenses against
the laws of the United States"); *see also Field v. United States*,
193 F.2d 86, 90 (2d Cir.1951) (recognizing that "District Courts
of the United States have jurisdiction of all offenses against
the laws of the United States"). In short, the United States
Constitution expressly gives Congress the power to create courts
inferior to the Supreme Court. The United States District Court
for the District of Connecticut is such a court and therefore has
had and will always have jurisdiction over the petitioner's
criminal case.

As the Supreme Court explained in *Gibbons v. Ogden*, 22 U.S.
(9 Wheat.) 1, 196 (1824): "The power of Congress, [ ] whatever it
may be, must be exercised within the territorial jurisdiction of
the several States." *Id*. at 196. When it comes to criminal
matters, the federal government and the states have concurrent

-14-

jurisdiction, and an individual may be prosecuted separately by the two sovereigns for the same act. *See, e.g., United States v. Wheeler*, 435 U .S. 313, 317 (1978) ("a federal prosecution does not bar a subsequent state prosecution of the same person for the same acts").

Some additional discussion is, perhaps, in order:  In *Ace Auto Body & Towing v. New York*, 171 F.3d 765 (2d Cir. 1999), the Second Circuit explained that "[l]ooming over our Republican form of government, where each state in the exercise of sovereignty enacts its own laws, lies the Supremacy Clause of the U.S. Constitution, from which clause has been derived a legal concept known – to judges and lawyers, if not to laypersons – as preemption.  Preemption [is] the doctrine by which federal law supplants contrary state and local law[.]"  *Id*. at 768.  The Supremacy Clause of the Constitution provides that "*the Laws of the United States* ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. (emphasis added).  Thus, Congress has the power to enact laws against, among other things, distributing marijuana.  It is axiomatic that federal courts were created to provide fair trials for persons accused of violating federal law.

But Congress' authority to enact laws is not unfettered. For example, Congress may regulate only activities substantially

-15-

affecting interstate commerce.  *See* U.S. Const. art. I, § 8, cl. 3 (Commerce Clause); *United States v. Lopez*, 514 U.S. 549, 558-63, 115 S.Ct. 1624 (1995) (defining scope of commerce clause authority). The Commerce Clause "provides that 'Congress shall have Power . . . [t]o regulate Commerce with foreign Nations and among the several States . . . .'" *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004) (alteration in original) (quoting U.S. Const. art. I, § 8, cl. 3).  The Second Circuit has suggested that "[a]mong the eighteen Congressional powers enumerated in Article I of the Constitution, the Commerce Power is, perhaps, the most sweeping." *United States v. King*, 276 F.3d 109, 111 (2d Cir. 2002).

In *Lopez*, the Supreme Court categorized the activities that Congress may permissibly regulate under the Commerce Clause:

> First, Congress may regulate the use of the channels of interstate commerce.  Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.  Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce.

*Id*. at 558-59 (internal citations omitted).  The *Lopez* Court struck down a law that prohibited simple possession of a firearm in school zones, reasoning that the law fell within neither of the first two categories (because guns are neither channels nor instrumentalities of commerce), and that simple gun possession in

a school zone did not "substantially affect interstate commerce." *Id*. at 559-61; *see also United States v. Morrison*, 529 U.S. 598, 609-11 (2000) (striking down provision of Violence Against Women Act, which provided civil remedy for violence motivated by gender; finding statute deficient under third *Lopez* category). "A showing that a regulated activity substantially affects interstate commerce (as required for the third category) is not needed when Congress regulates activity in the first two categories." *United States v. Gil*, 297 F.3d 93, 100 (2d Cir. 2002).

Thus, to the extent the petitioner's jurisdictional challenge can be construed to attack Congress' authority to enact federal drug laws, enforceable in federal courts, it should be noted that the courts have recognized and approved Congress' regulation of drug trafficking offenses due to the impact that this activity has on commerce. For example, many defendants convicted of selling drugs within 1000 feet of a school have invoked *Lopez* and claimed that the same principles should apply to possession with intent to distribute illegal drugs in a school zone, which is proscribed by 21 U.S.C. § 860(a). These challenges have universally failed, however, because it is well established that the illegal sale of drugs affects interstate commerce, and Congress accordingly has authority under the Commerce Clause to criminalize and punish drug-related activity.

-17-

*See United States v. Ekinci*, 101 F.3d 838, 844 (2d Cir. 1996);

*United States v. Hawkins*, 104 F.3d 437, 439-40 (D. C. Cir. 1997);

*United States v. McKinney*, 98 F.3d 974, 977-80 (7th Cir. 1996);

*United States v. Orozco*, 98 F.3d 105, 106-07 (3d Cir. 1996);

*United States v. Zorrilla*, 93 F.3d 7, 8-9 (1st Cir. 1996); *United States v. Tucker*, 90 F.3d 1135, 1139-41 (6th Cir. 1996); *United States v. Bernard*, 47 F.3d 1101, 1103 (11th Cir. 1995) (per curiam).

### E.   The defendant was properly advised of the elements of the offense at the time he pleaded guilty.

In an "amended" motion filed on or about July 25, 2005, [Doc. # 272], the petitioner argues that the district court "totally failed to inform the defendant of the necessary territorial and extra-territorial jurisdictional nexus/elements" that must be proven.  Br. at p. 5.  Here, the petitioner admitted to conspiring to possesses with intent to distribute and distribution of 100 kilograms or more of marijuana.  21 U.S.C. § 846 provides: "Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both[.]"  Section 841 makes it a crime to possess with intent to distribute or to distribute a controlled substance, including marijuana.  Nothing in either of these statutes mandates that jurisdiction is an element of the crime.

The petitioner's reliance on *United States v. Baker*, 609

-18-

F.2d 134 (5th Cir. 1980), is entirely misplaced. In *Baker*, the
Fifth Circuit held that a defendant who possessed over 25 tons of
marijuana on an American flag vessel well outside the three-mile
territorial jurisdiction of the United States, but within the
twelve-mile "customs waters" could be prosecuted under 21 U.S.C.
§ 841. *Id*. at 135. In so holding, the court explained that

> [t]he statute under which defendants were convicted is
> designed to preclude the distribution of controlled
> substances within the United States. The district court
> did not specifically instruct the jury that distribution
> within the territorial United States is an element of the
> crime. *An instruction as to the place of intended*
> *distribution is unnecessary where possession is found*
> *within the United States*.

*Id*. at 139 (Emphasis added).

The government's research reveals a second case similar to
*Baker* but equally inapposite. *See United States v. Hayes*, 653
F.2d 8, 15 (1st Cir.1981) (holding that "21 U.S.C. § 841(a) ...
does not apply to American vessels on the high seas unless the
'intent to distribute' is an intent to distribute in the United
States"). However, these cases deal with defendants who were
apprehended outside of the United States. In *Baker* and *Hayes*,
the fact that the defendants intended to distribute contraband in
the United States was only relevant insofar as it supplied a
jurisdictional nexus that might have otherwise been lacking. *See*
*United States v. Muench*, 694 F.2d 28, 33 (2d Cir. 1982)
(discussing the extraterritorial jurisdiction in *Hayes* and

*Baker*).  By contrast, the case at bar does not involve extraterritorial jurisdiction.  The petitioner possessed the marijuana in Texas, Arizona, Connecticut and parts in between. Where, as here, the criminal acts were committed in the United States, not even the fact that the defendant intended to distribute contraband outside of the United States (a claim not advanced by the petitioner) would divest the court of jurisdiction.  *See e.g., United States v. Gomez-Tostado*, 597 F.2d 170, 172-173 (9th Cir.1979).

In *Gomez-Tostado*, the defendant was stopped in San Diego, California, en route to Mexico with five kilograms of heroin in his car.  On appeal, *Gomez-Tostado* argued that the district court lacked jurisdiction under 21 U.S.C. § 841(a) because he intended to distribute the heroin in a foreign country.  *Id*. at 172.  The Ninth Circuit rejected Gomez-Tostado's argument, holding that "we find nothing in the legislative history or language of section 841(a)(1) that suggests any congressional intent to limit the applicability of the statute to defendants whose intended distribution point is in this country."  *Id*.

This body of cases demonstrates that while a court must satisfy itself that jurisdiction exists over a defendant charged with a violation of 21 U.S.C. §§ 841 and 846, these statutes do not carry a jurisdictional element that is in fact part of the crime, unlike other statutes such as the Hobbs Act.  *See e.g.*,

*United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998) (holding
that in the case of a Hobbs Act prosecution under 18 U.S.C. §
1951, the requirement of an effect on interstate commerce is
itself an element of the offense charged, and the determination
of whether the jurisdictional element has been satisfied is part
and parcel of the inquiry into the "general issue" of whether the
statute has been violated); *see also United States v. Pinckney*,
85 F.3d 4, 6-8 (2d Cir. 1996) (discussing whether interstate
commerce prong of "chop shop" statute, 18 U.S.C. § 2322(b), is
jurisdictional element or an element of the crime with a
corresponding *mens rea*); *see also, United States v.
Maldonado-Rivera*, 922 F.2d 934, 969 (2d Cir. 1990) (Second
Circuit joins Fourth and Ninth Circuits in flatly rejecting the
proposition that venue is an essential element of an offense).\

     Because the petitioner has not pointed to any authority to
suggest that 21 U.S.C. §§ 841 and 846 have jurisdictional
elements built in, his claim fails as a matter of law.

### CONCLUSION

     For the reasons set forth above, the petitioner's claims

should be rejected and the motion denied without further hearing.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

/s/
MICHAEL J. GUSTAFSON
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR #ct01503
157 CHURCH STREET
NEW HAVEN, CT 06510

## CERTIFICATION

I hereby certify that a true copy of the foregoing was mailed, postage prepaid, this    day of February, 2006, to:

Kenneth Hawkins
Reg # 04844-070
Dorm 210
Duluth Federal Prison Camp
PO Box 1000
Duluth, MN 55814

_/s/_____
MICHAEL J. GUSTAFSON
ASSISTANT UNITED STATES ATTORNEY