IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

*FILED*

2006 MAR 24  A 10: 55

KENNETH HAWKINS,
                    Petitioner,

-V-                                        Case Number(s) 3:00CR75
                                                          3:05CV1186

UNITED STATES OF AMERICA,
                    Respondent,

. . . . . . . . . . . . . . . . . . . . . . . .

### PETITIONERS TRAVERSE TO THE GOVERNMENTS OPPOSITION
### TO PETITIONERS MOTION PURSUANT TO 28 U.S.C. § 2255 MOTION

NOW INTO COURT, Comes Kenneth Hawkins the Petitioner appearing through Pro-Se
representation and respectfully submits to this Honorable Court his Traverse contest-
ing the Governments Response To His Request For Relief.

A Pro-Se litigants pleadings are to be construed liberally and held to a less
stringent standard than formal pleadings drafted by lawyers. **HAINES V. KERNER,** 30
L. Ed. 2d. 652(1972): **ESTELLE V. GAMBLE,** 50 L. Ed. 2d. 251 (1976). A Court should
make a reasonable attempt to read the pleadings to state a valid claim on which
the Petitioner could prevail, despite the Petitioners failure to cite proper legal
authority, his confusion of various legal theories, his poor syntax and sentence
construction, or his unfamiliarity with the pleading requirement. **HALL V. BELLMON,**
935 F. 2d. 1106, Fed. R. Civ. P. 8(f)(Holding that all pleadings shall be so con-
strued as to do substantial justice).

A memorandum brief in support of this motion is made part of this motion by
reference herein.

Respectfully Submitted

Kenneth Hawkins-Pro-Se

Petitioner waives Issue 1 and Issue 2.

## Issue 3 - The Court Lacked Jurisdicition

The Government claims; "The Federal Court had jurisdiction to entertain a drug prosecution".

Here the key word is "entertain", this petitioner does not dispute the fact that the federal court had jurisdiction to "entertain" a drug prosecution, as this petitioner is well aware of the fact that an indictment simply charging an offense under the laws of the United States grants the Court jurisdiciton to at least "entertain" the case;

> "After an offense under laws of the United States was set
> forth in returned indictment, district Court had jurisdiction..."
> De La Maza v. U.S., CA 9 (Cal) 215 F.2d. 138 (1954)

This Petitioner simply avers the fact that the federal Court under which the government construes jurisdiction under Title 18 U.S.C. § 3231 as stated in the governments response, does not extend into the (50) States Republic as set forth herein, therefore unless the government was ceded exclusive or concurrent, legislative, criminal, and territorial jurisdiction over and upon the places in which the overt acts and conspiracy had in fact taken place by way of Title 40 § 255 "Letter of Acceptance" granted by Connecticut State legislators, no such jurisdiction existed, as stated in Petitioner's original brief.

> "No jurisdiction existed in the United States to enforce
> federal criminal laws until consent to accept jurisdiction
> over acquired lands have been filed in behalf of the United
> States as provided in Title 40 U.S.C. § 255, and the fact that
> State authorized government to take jurisdicion was immaterial",
> Adams v. United States, 319 U.S. 132, 87 L.Ed 1421 (1943).

The government's response contends that the Constitution grants Congress authority to create inferior courts and as such; "...Under 18 U.S.C. § 3231, district courts have original jurisdiction over all criminal matters arising under the law of the United States", furthermore quoting "...The United States District Court for the District of Connecticut is such a court and therefore has had and will always have jurisdiction over the petitioners criminal case".

Petitioner does not dispute the fact that Congress has Constitutional grants of power to create inferior courts, as the government has pointed out. But it is this Petitioner's position that just because the Constitution grants Congress power to create inferior courts does not necessarialy grant the inferior court jurisdiction over and upon the land wherein the overt acts and conspiracy had in fact occured. Simply put the issue is not what Congress can do, but is what Congress did do. In other words did Congress place (territorial) limits on the Court.

It should be noted the law is well established regarding judicial jurisdiction as follows:

> "There is no presumption in favor of jurisdicition and the basis for jurisdiction must be affirmatively shown". Hanford v. Davis, 163 U.S. 273, 41 L.Ed. 157 (1896)

Furthermore:

> "Lack of jurisdiction cannot be waived", Glidden v. Zdanok, 370 U.S. 535-37 (1962), may be asserted at any time, and will be considered on appeal regardless whether the issue was raised in the trial court, United States v. Nukida, 8 F.3d. 665, 668-69 (9th Cir. 1993). "Jurisdictional Claims" are an exception to the rule that a guilty plea waives all claims of Constitutional violations, United States v. Wood, 958 F.2d. 975, 977 (1991 9th Cir.), United States v. Robertson, 698 F.2d. 703, 704, n. 1 (5th Cir. 1983) as the issue of whether the government had the power to bring the charge still remains, United States v. Cortez, 973 F.2d. 764, 766-67 (9th Cir. 1992).

Where a federal court is without jurisdiction of the offense, judgement of conviction of the Court and/or the jury is void ab initio, on it's face, Bauman v. United States, 196 F.2d. 534 (1946); and where the subject matter, or the place where the crime was committed can be raised in any stage of the criminal proceedings, including execution of sentence, it is never presumed, but must always be proved, and it is never waived by an accused, United States v. Rogers, 23 F. 658 (1885).

-3-

The reason that the jurisdiction of the federal courts must be proven when challenged is that Constitutional authority is merely the first hurdle that must be overcome in determining that a federal court has jurisdiction over a particualar controversy, because the jurisdiction of the federal court is limited not only by Constitution, but also by Acts of Congress, Owen Equip. and Erection v. Kroger, 437 U.S. 365, 57 L.Ed. 2d. 274, 281-83 (1978), also see: Palmore v. United States, 411 U.S. 389, 401, 36. L.Ed. 2d. 342, Lockerty v. Phillips, 319 U.S. 182, 187, 87 L.Ed. 2d. 1339, Kline v. Burke Const. Co., 260 U.S. 226, 234, 67 L.Ed. 226.

### United States District Court vs District Court of The United States

The jurisdiction of the federal courts is defined at Art 1, § 8, cl. 9, for judicial power courts, and Art IV, § 3, cl. 2, for territorial courts and some courts created by Acts of Congress. Some of these courts have been referred to as "Constitutional Courts", whereas others are regarded as "legislative, and/or Territorial Courts", O'Donoghue v. United States, 289 U.S. 516, 77 L.Ed. 2d. 1356 (1993); Mookini v. United States, 303 U.S. 201, 82 L.Ed. 748 (1938).

It was held that while Congress may establish "legislative courts", whose judges do not enjoy guarantees of Article III, "inherently judicial tasks" must be performed by judges deriving their powers under Article III, United States v. Sanders, 641 F.2d. 659, 633-34 (9th Cir. 1981), cert denied, 452 U.S. 918, 69 L.Ed. 2d. 422 (1982); Palmore v. United States, 411 U.S. 389, 390-410, 36 L.Ed. 2d. 342 (1973).

The United States District Court (U.S.D.C.'s) creation and composition was by the Act of Congress on June 25, 1948, [62 Stat. 895] and November 13, 1963, [77 Stat. 331], currently codified at Title 28 U.S.C. § 132 and § 81-131, (California is § 84, Oregon is § 117, Texas is § 124, etc.) "THE ACT" of June 25, 1948 consolidated Title 28 U.S.C. § 1 (1940 edition), with Title 48 U.S.C. § 641, (1940 edition), which deals with District Courts, "of the territories and insular possessions of the "United States".

The United States District Courts (U.S.D.C.) are not courts of general jurisdiction, and have no jurisdiction except as prescribed by Congress pursuant to Article III, as held in, Graves v. Snead, 541 F. 2d. 159, 161 (1976), cert denied, 429 U.S. 1093 (1976).

The jurisdiction of the United States District Court is codified at Title 28 U.S.C. § 1331, which lists all actions in civil, admiralty, maritime, patent, bankruptcy, etc.... but not criminal. The Acts of Congress which established United States District Courts do not vest these courts with any criminal jurisdiction, (at least outside the federal areas), and it is well established that the United States District Courts have only such jurisdiction as is conferred by an Act of Congress under the Constitution, Hubbard v. Ammerman, 465 F. 2d. 1169, 1176 (1972), cert. denied, 410 U.S. 910.

The court of appropriate (criminal) jurisdiction for violations of provisions of Title 18 U.S.C. as the government points out in their response, is designated at Title 18 U.S.C. § 3231, which states "District Courts of the United States have jurisdiction of all offenses against the laws of the United States", clearly not "United States District Courts".

Clearly, there is a distinct and definite difference between a "United States District Court" and a "District Court of the United States", (or "District Court of the United States of America"). The aforementioned fact is well established by numerous decisions including International Longshoremen's and Wherehousemen's Union v. Jueau Spruce Co., 342 U.S. 237, 96 L.Ed. 275 (1952), where the Court stated:

> "The words 'District Court of the United States of America' commonly describe Constitutional Courts created under this Article III, and not the legislative courts of the Territories"

This issue is nothing new, being settled long ago, as in American Insurance Company v. 356 bales of Cotton, 26 U.S. 511 (1828), to wit;

> "'Territorial Courts are as legislative courts distinguished from Constitutional Courts'. And also Balzac v. Puerto Rico, 258 U.S. 298 (1922), wherein it was stated by the United States Supreme Court: "... The United States District Court is not a true United States Court established under Article III, to administer the raw Judicial Power of the United States therein conveyed, it is created by virtue of the sovereign Congressional faculty, granted under Article IV, § 3, of that instrument, of making all needful rule and regulations respective of territory belonging to the United States."

The distinction between the dual nature of the Federal Court system is also noted in Title 18 U.S.C. § 3241, which states that the United States District Court for the Canal Zone shall have jurisdiction concurrently with the District Courts of the United States, of offenses against the laws of the United States committed upon high seas, and this distinction is <u>venue</u> and federal jurisdiction is more than a technical concept, it is a Constitutional requirement, as stated in <u>United States v. Johnson</u>, 337 F.2d 180, 192 (1964) affirmed, 383 U.S. 169 (1965).

Never the less, it was recognized that:

> "The distinction .... between 'Constitutional and legislative' courts has been productive of much confusion and controversy", <u>Glidden v. Zdanok</u>, 370 U.S. 530, 8 L.Ed. (2d) 671 (1962).

The court recognized these differences as being of "<u>Jurisdictional</u>" in nature and stated;

> ".... when the statute claimed to restrict authority is not merely technical, embodies a strong policy concerning the proper administration of judicial business, this Court has treated the alleged defect as 'jurisdictional' and agreed to consider it", <u>Glidden</u>, supra at 678-79. (emphasis added.)

And latter in their opinion, the Court defined the differences as follows:

> "Those established under the specific power given in section 2 of Article III, are called Constitutional Courts. They share in the exercise of the judicial power defined in that section, can be invested with no other jurisdiction ... on the other hand, those created by Congress in exertion of other powers are called legislative courts. Their function always are directed to the execution of one or more of such powers and are prescribed by Congress independently of Section 2 of Article III", <u>Glidden</u>, supra at 712. (Emphasis Added.)

The significance of the difference is well illustrated in <u>Palmore v.</u>
<u>United States</u>, 411 U.S. 389, 36 L.Ed.2d. 342, at 359 (1973), wherein it was
stated;

> "we conclude that Congress was not required to provide
> an Article III Court for trial of criminal cases arising
> under its laws applicable only within the District of
> Columbia". (Emphasis added.)

The Court stated the difference and the fundamental issue in Glidden, Supra
at n. 54 on page 705, to wit:

> "The DC Code, 1961, Title II, C5. establishes a special term
> of United States District Courts as a probate court, whereas
> the other Federal District Courts have been disbarred from
> exercising such a jurisdiction as on traditionally within
> the domain of the States" (Emphasis added.)

and then further clarified the issue by stating:

> "There, as here, the power relied upon was given Congress
> to exercise exclusive jurisdiction over the District of
> Columbia, and to make all laws necessary and proper to carry
> such power into effect. But this court clearly and unequivacally
> rejected the contention that Congress could thus extend the
> jurisdiction of Constitutional Courts", <u>Glidden</u> supra at n.6
> page 716. (Emphasis added.)

The foundational reason for the necessity of the differences was also
discussed:

> "Those who wrote our Constitution well knew the danger
> inherent in special legislative acts which take away the
> life, or property of <u>particular named persons</u>, because the
> legislature thinks them guilty of conduct which deserves
> punishment. They intend to safeguard the people of this
> country from punishment without trial by duly constituted
> courts", <u>Glidden</u> supra, at 716. (Emphasis added.)

Clearly, the vast majority of the members of the Court have no problem with those defendants being charged, tried, and sentenced in a court that is <u>not</u> duly constituted, however, United States Supreme Court Justice Douglas stated in <u>Glidden</u>, supra at 719, that judges who might be confirmed for other courts, might "never pass muster for the onerous and life or death duties of Article III judges".

Obviously the standard procedure today is for a State citizen, without federal criminal liability, to be subjected to a federal indictment and charged before an Article I or Article IV court, without criminal jurisdiction, without territorial jurisdiction, without legislative jurisdiciton, in absence of judicial jurisdiction, and lacking subject matter jurisdiction over and upon an offense committed  soley outside the exclusive  or concurrent jurisdiction of the "United States".

Next, refer to the Parallel Table of Authorities and Rules which begins on page 751 of the 1995 index to the Code of Federal Regulations.  Note, on page 779 the following is found;

> "There are no regulations published in the Federal Register
> which extends authority for [Title] <u>18 U.S.C. §§ 1 through 12
> or 3231</u> to the (50) States Republic". (Emphasis added.)

Taking into account the fact that the U.S. Attorney relied upon Title 18 § 3231 for the court's jurisdiction to indict, charge, and sentence this Petitioner for acts committed soley outside the federal courts territorial and criminal jurisdiction, it should be clear that the court was without jurisdiction to sentence this Petitioner.

Furthermore, notice that Titles 18 § 1 through 12 are also restricted from the (50) States Republic, more specifically Title 18 § 5 "United States defined", Title 18 § 7 "Special maritime and territorial jurisdiction of the United States defined", and most importantly, Title 18 § 10 "Interstate commmerce and foreign commerce defined" conclusively proving that Congress expressly limited the federal courts territorial, criminal, and legislative jurisdiction to be restricted to federal areas only.

The necessity for implementing regulations being published in the Federal Register is without question.  California Bankers Ass'n v. Schultz, 416 U.S. 12, 26, 39 L.Ed. 2d. 812 (1974).

> "All regulations must  be published in the Federal Register
> to have general application and legal effect...", see
> United States v. Welden, 319 U.S. 423, and also
> Stephan v. United States, 377 U.S. 95.

Furthermore it must be noted:

In Morton v. Ruiz, 415 U.S. 199 the Supreme Court held the following on the Federal Register Act and the Administrative Procedures Act:

[9] The Administrative Procedures Act was enacted to provide inter-alia, that administrative policies that effect substantial rights and obligations be promulgated pursuant to certain stated procedures so as to avoid the inherently arbitrary nature of unpublished ad hoc determinations.  The Act states in pertinent part:

> "Each Agency shall seperately state and currently publish in the Federal
> Register for the guidance of the public";
>
> (D) substantive rules of general applicability, adopted as authorized by law
> and statements of general policy or interpretations of general applicablility
> formulated and adopted by the agency; 5 U.S.C. § 522 (a)(1)

And this sanction added in 1967 by Pub. L 90- 23, 81 Stat. 54 providing:

> " Except to the extent that a person has actual and timely notice of the
> terms thereof, a person may not in any manner be required to resort to
> or be adversely affected by, a matter required to be published in the
> Federal Register and not so published." [ 415 U.S. 232-33 ]

In American Federation of Government Employees, AFL-CIO v. Carmen, 669 F.2d 820, the Circuit Court for the District of Columbia held the following, "Where Executive Orders, executive officer delegations and regulations are not published in the Federal Register in compliance with the mandates and requirements of Title 44 U.S.C. § 1505 (a); application of the statutes may be only to federal officials and employee's, United States territories and insular possessions, and United States maritime jurisdiction".

This again is precisely the geographical bounds proscribed at Art. IV sec. 3 cl. 2 and Ttitle 18 U.S.C. § 7, with verification of geographical application being that there are no regulations published, as would be required in the Federal Register for Title 21 of the United States  Code.

Title 1 C.F.R. § 51 : All regulations must be published in the Federal
Register to have general application and legal effect... See United States v.
Welden  19 U.S. 423, Stephan v. United States 377 U.S. 95

The Adminstrative Procedures Act, 5 U.S.C. § 553, and the Federal Register Act
44 U.S.C. § 1505, REQUIRE publication irrespective of actual notice as mandate
prerequisites in issuance of regulations making certain acts criminal, as was
held in Hotch v. United States, 212 F.2d. 280:

" Under our system of law, no act is punished as a crime, unless it is
  specifically condemned by the common law or by statutory enactment of
  legislature, [22 C.J.S., Crim. Law, Sec 17 ] Therefore the Administrative
  Procedures act must be read as part of every Congressional delegation
  of authority unless specifically excepted.  Those acts require publication,
  irrespective of actual notice, as a prerequisite to the issuance of
  regulation making certain acts criminal.  If certain acts have not been
  made crimes by the duly enacted law, then the knowledge of their
  contemplated administrative proscription can not subject the informed
  person to criminal prosecution.  While ignorance of the law is no
  defense, it is conversely true that a law which has not been enacted
  into positive law, is not a law of gereral application; therefore,
  a person who does not comply with it's provisions cannot be guilty
  of any crime."

In United States v. Vazquez, 271 F.3d. 93, an enbanc panel of the 3rd Circuit
Court, ruling on the structure of statute 21 U.S.C. § 841, held the following:

" Unfortunately, when the C.S.A. was reproduced in the United States
  Code, the margin notes were converted into subsection headings by
  the codification committee, but have never been officially adopted
  by Congress, and therefore, do not have the force of law.  See U.S.C.
  at vii, 1994 & Supp. V 1999... noting that Title 21 has never been
  officially codified.  " [271 F.3d. 111]

Petitioner next submits from the National Archives and Records Administration;
the Office of the Federal Register:

" Title 21 of the United States Code has at no time been published in
  part or it's entirety in the Federal Register."

-10-

And from the General Accounting Office:

" Our office does not provide legal research services to the public.
We note however that <u>Title 21, has not been enacted into positive
law</u>, but is a codification of the statutes. " (emphasis added)


Here again we have a statute under which this Petitioner was sentenced that
has limited application, and again we apply the law that states:

" ... While ignorance of the law is no defense, it is conversely true
that a law which has not been enacted into positive law, is not
a law of general application; <u>therefore, a person who does not comply
with its provisions cannot be guilty of any crime</u>" <u>Hotch v. United</u>
States, 212 F.2d. 280. (emphasis added)


Clearly, this Court has not only exceeded it's limited criminal jurisdiction
in this particular case, but the government is misapplying the statute (Title
21) in question as well.

Courts are sworn to abide by the dictates of existing law and may not
deliberately bypass explicit Congressional intent, <u>Landano v. Refferty</u>, 670
F. Supp. 570, 583 (1987), and <u>United States Constitution</u> Article VI, Clause 2.

Next, the Government points to numerous cases addressing different avenues
by which Congress has been granted the authority and power under the Constitution
to regulate commerce within the (50) States.  Included, but not limited in the
Government's list of avenues are; the commerce clause, the Supremacy clause,
the pre-emption doctrine, and the degree in which Congress may chose to regulate
such activities, such as, activities that "substantially affect interstate
commerce",  all of which are irrelavant with respect to the case in hand.
See, <u>Governments response</u> at pages 14 through 18.

Again, this petitioner is neither questioning nor challenging Congress'
authority or powers it has been granted under the U.S. Constitution to regulate
commerce among the states.

The question before this court is not what Congress can do, but is rather,
what in fact did Congress do.

Finally the government makes a last ditch effort to justify the government's position by stating the following:

" These challenges have universally failed, however, because it is
    well established that illegal sale of drugs affects interstate
    commerce, and Congress accordingly has authority under the
    Commerce Clause to criminalize and punish drug related activity."

Petitioner's response to this remark is, in the event the Government hasn't notice, Title 18 § 10 - "Interstate Commerce and Foreign Commerce defined" is also restricted from extending into the (50) States Republic. There by conclusively proving it was not Congress' intent to regulate interstate commerce withing the fifty states.

Furthermore;

" It is elementary that a Federal Court cannot create jurisdiction
    where none exists.  Thus a federal court cannot <u>assert jurisdiction</u>
    merely by relying on the Courts own prior decision that jurisdiction
    over a claim was proper.  On the contrary, it is the Courts obligation
    to dismiss a case whenever it becomes convinced that it has no proper
    jurisdiction ... no matter how late that wisdom may come  ",
    <u>Wyoming v. Oklahoma</u>, 502 U.S. 437, 462 (Justice Scalia).

- Conclusion -

Throughout this respone, the Petitioner herein has pointed to numerous facts and authorities, that suggest the Court was without jurisdiction to sentence this Petitioner.

In their response to ISSUE 3 of the original brief (2255), the Government points to the courts authority quoting; "under 18 U.S.C. § 3231, district courts have original jurisdiction over all criminal matters arising under the law of the United States".

But Title 18 U.S.C. § 3231 states "District Courts of the United States" shall have original jurisdiction over all criminal matters arising under the laws of the United States, not "United States District Courts" under Title 28 § 1331.

-12-

Furthermore, the fact still remains, this Petitioner was charged and sentenced by a "UNITED STATES DISTRICT COURT" as stated on the face of criminal indictment 3:00 CR 75 (AWT), which has not criminal jurisdiction, at least not within the exclusive jurisdiction of the fifty States.

The fact is, neither the "United States District Court" nor the "Dictrict Court of the United States" had criminal authority to sentence this Petitioner, unless the overt acts and conspiracy(mens-rea) charges under which this Petitioner and/or his co-defendants were indicted on, had in fact, either:

    a)  "possessed" marijuana within the "Territorial United States"
    b)  "intended to distribute" marijuana within the "Territorial United States"
    c)  "distributed" marijuana within the "Territorial United States", or
    d)  "conspired"(mens-rea) with one another to commit one or more of the overt
        acts mentioned above (a,b,c) which might or did cause effects within
        the "Territorial United States".

Taking into account that "... all federal crimes are statutory, and all criminal prosecutions in the Federal Courts are based on Acts of Congress...", Federal Rules of Criminal Procedure, Rule 26, Taking of Testimony Notes of the Advisory Committee on Rules.par 2

And the fact that, "Acts of Congress" includes any act of Congress <u>locally</u> applicable to and in force in the District of Columbia, in Puerto Rico, in a territory, or insulary possession", Federal Rules of Criminal Procedure, Rule 54(c), (Application of Terms).

Further suggesting that the Court's (criminal) jurisdiction is strictly limited.

Moreover, the fact that this Petitoner was charged and sentenced under a statute (21 U.S.C. § 841 & 846) which has never been published in the Federal Register in part or in its entirety (thereby giving notice to all whom it may effect), as mandated by the Federal Register Act, nor has it ever been enacted into "Positive Law", further supports this Petitioner's theory, that the statute under which this Petitioner was charged, indicted, and sentenced, is not a law of general application but only has limited application, that being limited to "Federal areas."

-13-

For the above reasons, both Courts simply lacked jurisdiction to sentence this petitioner lawfully.

Therefore, this Petitioner requests that the case be remanded for an evidentuary hearing to determine whether or not the overt acts and conspiracy offenses, had in fact occured, were intended to take place, or had an effect, within the "Territorial Untied States" defined at Title 18 §§ 5 and 7 or Title 21 § 802(26)(28), or otherwise dismiss the case for lack of jurisdiciton.

Respectfully Submitted

Kenneth Hawkins, Pro-Se
Reg. #04844-070, Dorm 210
Duluth Federal Prison Camp
PO Box 1000
Duluth MN  54814

Executed on this 20th Day of March 2006

-14-

**Issue 4 - The Court failed to inform the defendant of all the essential
elements of the charge to which he plead guilty.**

- Incorporation by Reference -

Petitioner hereby incorporates by reference the attached response (Issue 3)
and "Amended" motion filed on or about July 25, 2005, as if they were set forth
herein.

- Response -

First, the Government suggests the statutes under which the Petitioner was
charged provides: "nothing in either of these statutes mandates that jurisdiction
is an element of the crime", referring to;

21 U.S.C. § 846 - any person who attempts or conspires to commit any offense
defined in this subchapter is punishable by imprisonment or fine or both.

21 U.S.C. § 841 - makes it a crime to possess with intent to distribute or to
distribute a controlled substance.

Petitioner avers that while the statutes as they stand alone may not expressly
mandate a jurisdictional element on it's face, Petitioner simply incorporates
the Canon's of Statutory Constitution used throughout the history of this country
which state in part:

" It is a well established principle of law that, <u>All legislation is prima
facia territorial</u>", <u>American Banana Co. v. United Fruit Co.</u>, 213 U.S. 347 (1909).
(Empahsis added)

Therefor, we thus apply '[t]he Canon of Construction' which teaches "that
legislation of Congress, unless a contrary intent appears, is meant to apply only
within the territorial jurisdiction of the United States", <u>Foley Brothers v.
Filardo</u>, 336 U.S. 281, 285 (1949), <u>United States v. Bowman</u>, 267 U.S. 94 (1922),
and <u>Caha v. United States</u>, 152 U.S. 211, 215 (1894).  (Emphasis added)

-15-

Furthermore, it is imperative to know and understand just what is meant by the term "territorial jurisdiction of the United States".

The terms "United States" and "territorial jurisdiction of the United States" are defined in Title 18 § 5 and 7 and include only places and waters, under the exclusive or concurrent jurisdiction of the United States Federal Government.  In short Federal Areas, such as U.S. Post Offices, U.S. Military Bases, U.S. National Parks, U.S. Federal Buildings, U.S. Coast Guard stations, and lands such as Peurto Rico, U.S. Virgin Islands, Washington D.C., etc.

These "Federal Areas" again are repeated briefly at Title 21 § 802 (26) and (28), thereby implying, that these geographical areas apply to each and every subsection beginning at 21 § 802 and ending at 21 § 888, where at 21 § 889, the geographical areas change to include expressly the (50) States.  Also see the defination of "United States" in Hooven & Allison v. Evatt, 324 U.S. 652.

Next, the Government suggests that Petitioner's reliance on United States v. Baker, 609 F.2d 134, (5th Cir 1980), United States v. Hayes, 653 F.2d 8, 15 (1st Cir 1981), and United States v. Muench, 694 F.2d. 28, 33 (2nd Cir 1982), are misplaced.

To the contrary, Petitioner has stated throughout the "Amended" motion that instructions from the Court that a territorial nexus/element is necessary for the Government to substain a conviction.  As the statute is applied to this Petitioner.

In Baker, supra as the government pointed out, the fifth circuit held that a defendant who possessed over 25 tons of marijuana on an American flag vessel well outside the three mile territorial limit of the (Continental) United States, but within the twelve-mile (U.S.) "Customs Waters" could be prosecuted under 21 U.S.C. § 841. Id at 135.  In holding, the Court explained that:

>    "The statute under which defendants were convicted is designed to preclude
>    the distribution of controlled substances within the United States.  The
>    District Court did not specifically instruct the jury that distribution
>    within the territorial United States is an element of the crime. [Because]
>    an instruction as to the place of intended distribution is unnecessary where
>    possession is [already] found within the United States."

Again, the Government failed to state that the Court explained that the location of the vessel was the deciding factor as to whether or not the court had jurisdiction.

Bear in mind that the vessel was already located within U.S. "Customs Waters" it was unnecessary for the Court to instruct the jury that distribution within the territorial United States is an element of the crime, also called the "contiguous zone", between three miles and twelve miles from the coast, an area sometimes described as the "marginal sea", United States v. Louisiana, 394 U.S. 11, 22, (1969).

Next, in the case of United States v. Hayes, the Government quotes "21 U.S.C. § 841 (a)... does not apply to American vessels on the high seas unless the intent to distribute is an intent to distribute in the United States".

Here again the intent to distribute within the United States supplied the jurisdictional nexus/element necessary to sustain a conviction, in this case Hayes was heading to Puerto Rico with intent to distribute. Puerto Rico is U.S. Federal property, again it fits the term "United States" at Title 18 § 5 and Title 21 § 802 (28), all places and waters, continental or insular, subject to the jurisdiction of the United States".

Next the government quotes, "However, these cases deal with defendants who were apprehended outside of the United States." Petitioner herein, avers that he and his co-defendants were also outside the "United States" as the term is used in Title 18 § 5 and Title 21 § 802 (28).

Next the Government herein admits, the fact that the defendants intended to distribute contraband in the United States was only relevant insofar as it supplied a jurisdictional nexus that might otherwise be lacking. Petitioner avers that with out a jurisdictional nexus there can be no federal offense against the laws of the United States, Kanar v. United States, 118 F.3d 527, 530 (7th cir 1997).

Next, the Government suggest that because the Petitioner possessed the marijuana in Texas, Arizona, Connecticut and parts in between, the case at bar does not involve extra-territorial jurisdiction. To the contrary, Petitioner avers and points out, that Texas, Arizona, Connecticut, and parts in between are not places and waters, continental or insular, subject to the jurisdiction of the United States, as the term is defined in Title 18 § 5, and Title 21 § 802 (28), and therefor are in fact extra-territorial.

-17-

This fact has been established in other cases, to wit:

> "The accused could not enter a plea of guilty to distribution of drugs
> in violation of §§ 13-16-72 of the official code of Georgia Annotated...
> because an essential element of such offense is that the acts occured
> at a place subject to the exclusive or concurrent jurisdiction of the
> United States", United States v. Dallman, 34 MJ 274.

And:

> "[The] legislative history of this section [21 U.S.C. § 841] proscribing
> possession with intent to distribute marihuana indicates that is was
> intended by Congress to apply extra-territorial, but that it is violated
> only when the intent to distribute is an intent to distribute within
> the United States", United States v. Gould, ACMR, 13 MJ 734 (1982),
> United States v. Liddell, NCMR, 3 MJ 1117 (1977). (emphasis added)

Notice here in these three cases, that each military base was located in one
of the (50) States Republic, but that these Courts noted, an essential element
of such offense is that the acts occured were intended to occur at a place
subject to the exclusive or concurrent jurisdiction of the United States, here
again referring to all water and places, continental or insular, subject to the
jurisdiction of the United States.

Next the Government suggests that, "not even the fact that the defendant
intended to distribute contraband outside of the United States (a claim not
advanced by the petitioner) would divest the court of jurisdiction". See e.q.
United States v. Gomez-Tostado, 597 F.2d 170, 172-173 (9th Cir 1979). Here the
government points out in Gomez-Tostado, the defendant was stopped in San Diego,
California, en route to Mexico with five kilograms of heroin in his car. On
appeal, Gomez-Tostado argued that the district court lacked jurisdiction under
21 U.s.C. § 841(a) because he intended to distribute the heroin in a foreign
country. Id. at 172. The Ninth Circuit rejected Gomez-Tostado's argument, holding
that "we find nothing in the legislative history or language of section 841 (a)(1)
that suggests any congressional intent to limit the applicability of the statute
to defendants whose intended distribution point is in this country."

Here again, the Government failed to mention the fact that although Gomez-Tostado may have "intended to distribute" herion in Mexico, the fact still remains that he possessed herion in his car and that is car was brought to a DEA office three miles away from where he was originally stopped, and then searched. Thereby, providing the jurisdictional nexus/element to charge Gomez-Tostado.

Note in each of these cases Federal areas was a deciding factor in determining jurisdiction nexus/element in each case:

    a)  In Baker supra, the fact that the vessel was already located within U.S.
        Customs waters. (federal waters)
    b)  In Hayes supra, the fact that he "intended to distribute" in Peurto Rico
        (a federal area).
    c)  In Gomez-Tostado supra,  the fact that his car possessed five kilos of
        heroin at the DEA's office (federal property).

Contrary to the Governments next statement that "This body of cases demonstrates that while a court must satisfy itself that jurisdiction exists over a defendant charged with a violation of 21 U.S.C. §§ 841 and 846, these statutes do not carry a jurisdictional element that is in fact part of the crime, unlike other statutes ..."

The fact remains, as the Supreme Court has held, "All legislation is prima-facia territorial", American Banana Co. v. United Fruit Co., 213 U.S. 347 (1909), supra.

And for these reasons, we "assume that Congress legislates against the backdrop of the presumption against extraterritoriality", EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991).

Furthermore, the fact that conspiracy generally also requires at least one co-conspirator to commit an overt act in furtherance of the conspiracy within the "territorial jurisdiction of the district court's criminal jurisdiction".

Conspiracy generally, "District Court has jurisdiction over conspiracy and all those proved to be conspirators if conspiracy is designed to have criminal effects within United States and if there is sufficient proof that at least one co-conspirator committed overt act in furtherance of conspiracy within territorial jurisdiction of district court", United States v. Winter, 509 F.2d 975 (1975).

Finally the Government suggests that "Because the Petitioner has not pointed to any authority to suggest that 21 U.S.C. §§ 841 and 846 have jurisdictional elements built in, his claim fails as a matter of law."

Contrary to the Governments statement herein above, Petitioner has not only pointed to Canons of statutory construction that suggest there is in fact a "built in jurisdictional element" to wit:

"It is a longstanding principle of American law that legislation of" Congress unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States," U.S. V. Gatlin, 216, F. 3d. 207 (2nd. Cir. 2000), quoting "Aramco," 499 U.S. 248 (1991) supra. See also Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 428, 440 (1989).

Furthermore, Petitioner placed on page seven of his "Amended" motion the following:

It is a well established principle of law that, "All federal legislation applies only within the territorial jurisdiction of the United States unless a contrary intent appears." Caha V. United States, 152 U.S. 211(1984), American Banana Company V. United Fruit Company, 213 U.S. 347(1909), United States V. Bowman, 260 U.S. 94-98(1922).


-Conclusion-


As demonstrated throughout this response, including the "Amended" motion, this Petitioner has pointed to numerous facts and authorities that do in fact suggest a "Built In Jurisdictional Element" as the government states.

Petitioner avers the court failed to inform this Petitioner that the overt acts and conspiracy(mens-rea) offenses with which he and his co-defendants were charged, indicted and eventually sentenced on, must have had an effect or intented to have an effect within; All Places And Waters, contintental or insular, subject to the(exclusive or concurrent legislative) jurisdiction of the United States(Government), In other words the "Territorial United States."

Therefore, Petitioner and/or his co-defendants would have had to either;

a) "possessed" marijuana within the "Territorial United States"

b) "intented to distribute" marijuana within the "Territorial United States"

c) "distributed marijuana within the "Territorial United States" or

d) "conspired"(mens rea) with one another to commit one or more of the overt acts mentioned above(a,b,c) which might or did cause effects within the "Territorial United States." In order to have committed an offense against the laws of the United States.

Therefore, since the courts failed to recite and notify this Petitioner of all the essential elements[specifically the Jurisdiction element] of the charge in which this Petitioner was pleading guilty to, Petitioner avers that his guilty plea is invalid and void and should be set-aside, since it was entered into unintelligently, involuntarily and unknowingly and by mistake.


Respectfully Submitted


Kenneth Hawkins-Pro-Se
Reg#04844-070-Dorm-210
Duluth Federal Prison Camp
P.O. Box 1000
Duluth MN 55814


Executed On This 20th Day Of March 2006

-21-

CERTIFICATE OF SERVICE

I, Kenneth Hawkins, hereby certify under the penalty of perjury that on the last date given below, I deposited a true and correct copy of my TRAVERSE TO THE GOVERNMENTS RESPONSE TO MY MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255, in the Duluth Federal Prison Camps legal mail system with first class postage affixed to insure its proper delivery to:

Assistant United States Attorneys Office
For The United States District Court
Of Connecticut
450 Main Street
Hartford Connecticut 06103

And a certify copy to the following address:

Clerk Of The Courts
United States District Court
For The District Of Connecticut
450 Main Street
Hartford Connecticut 06103

Executed On This 20th Day Of March 2006

Kenneth Hawkins

# G A O

Accountability • Integrity • Reliability

United States General Accounting Office
Washington, DC 20548

November 22, 2000

Mr. Roberto Vila
No. 46413-004 W/B
Federal Correction Institution
Post Office Box 9000
Forrest City, AR 72336-7000

Dear Mr. Vila:

This is in response to your recent letter asking "has Title 21 of the U. S. Codes been enacted into positive law".

Our Office does not provide legal research services to the general public. We note, however, that Title 21 has not been enacted into "positive law", but is a codification of the statutes.

Sincerely yours,

Kenneth R Schutt

Kenneth R. Schutt
Supervisory Adjudicator



### National Archives and Records Administration
#### Office of the Federal Register

December 18, 2000

Mr. Arthur Trulock #05179-010
United Nations Federal Correctional Institution
P.O. Box 9000
Forest City, AK, 72336

Mr. Trulock

Title 21 of the United States Code (USC) has at no time been published, in part or in its entirety, in the Federal Register. The USC is maintained by the Law Revision Council, a Congressional entity. The content of the USC is comprised of permanent laws enacted and codified by Congress. To find the original laws that added or amended any of the codified material, consult the reference notes included in the volume relating to the parts or chapters you are interested in. These notes will assist you in finding the original law included in the U.S. Statutes at Large.

Both the USC and US Statutes at Large are available through a Federal Depository Library. If you do not have access to such a library, please consult your facility librarian to seek an interlibrary loan.

Due to personnel shortages, office policy precludes our staff from conducting lengthy research requests.

If our office can be of further assistance to you, please contact us again.

Sincerely,

Brian Swidal
Customer Service Unit
Office of the Federal Register



UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Grand Jury H-99-1

UNITED STATES OF AMERICA

v.

KENNETH HAWKINS

and

JOSE AGUIRRE

CRIMINAL NO. 3:00CR75(AWT)

VIOLATIONS:

21 U.S.C. § 846
(Conspiracy to Distribute
Marijuana)(Counts 1 & 2)

18 U.S.C. § 1513(b)(2)
(Threatening in Retaliation
for Providing Information to
Law Enforcement Officer)
(Count 3)

SECOND SUPERSEDING INDICTMENT

The Grand Jury charges:

COUNT ONE

From in or about September 1998 to on or about November 1999, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, KENNETH HAWKINS, the defendant herein, and others known and unknown to the Grand Jury, knowingly and intentionally conspired together and with one another, to possess with intent to distribute, and to distribute, 100 kilograms or more of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(vii).

All in violation of Title 21, United States Code, Section 846.